## McBroom's Estate

*Harry L. Keck,* for Anna G. Blue, petitioner.
*Guy Thorne,* contra.

McLAUGHRY, P. J., December 24, 1935.—The facts in this case, as admitted, are as follows: Anna G. Blue when about three months old was taken by James A. McBroom and his wife into their home, and Mr. McBroom and his wife, assuming the duties of parents, exercised parental authority over her and she was treated as one of the family although not related in any way, and never adopted as their child and heir. Mrs. McBroom died when Anna G. Blue was about thirteen years old, but she continued to live with James A. McBroom, and in about 1928 secured a position in a bakery, but lived with Mr. McBroom, paying no board and using her earnings for clothing and her own personal use. On October 28, 1930, she married Richard E. Blue, and a child was born to them on February 18, 1932, and Mr. Blue after the marriage came into the home and lived there with his wife and child. Mrs. Blue assisted in the housework and her husband supported his own family, yet they all lived together without any particular agreement. James A. McBroom died testate September 13, 1934, and under the provisions of the will bequeathed $2500 to Anna G. Blue, which amount she has received from the executors less transfer inheritance tax and other matters, leaving a balance of $2174.60. In addition to that, the executors have paid Mrs. Blue $11.40 interest accruing on the bequest after the expiration of one year from the date of the death of the said James A. McBroom. The petitioner is now claiming that under the provisions of section 21 of the Fiduciaries Act of June 7, 1917, P. L. 447, she is entitled to legal interest on said $2174.60 from the date of the death of James A. McBroom; that is, from September 14, 1934, to September 14, 1935. The question is dependent upon

the interpretation of section 21 of the Fiduciaries Act of 1917, supra, which reads as follows:

"Legacies, if no time be limited by the will for the payment thereof, shall in all cases be deemed to be due and payable at the expiration of six months from the death of the testator. Interest on all pecuniary legacies, whether bequeathed directly or in trust, shall, unless a contrary intention appear by the will, begin to run from the expiration of one year from the death of the testator; except that, if the account of the executor be filed and confirmed and distribution awarded before the end of such year, then interest on such legacies shall run from the date of the award: Provided, That where a pecuniary legacy is bequeathed to or for the use of the widow of the testator, or any child or descendant of the testator, or any person toward whom the testator in his lifetime stood in loco parentis, or for the maintenance of any person, interest shall, unless a contrary intention appear by the will, begin to run from the date of the death of the testator."

What did the legislature mean when it said: ". . . any person toward whom the testator in his lifetime stood in loco parentis"? Did the legislature intend this to apply to one who at some remote period stood in loco parentis to the decedent, or did it apply only to those who stood in loco parentis at the time of his death? In 22 Cyc. 1066 [31 C. J. 358], in defining loco parentis, we find the following:

". . . it means one who means to put himself in the situation of a lawful father to the child, with reference to the office and duty of making provision for the child."

From an examination of the different cases, we feel secure in saying the term means one assuming the parental character and discharging parental duties.

From the facts agreed upon in this case, it is evident that Mr.McBroom in every respect assumed the duties of a parent from the time the child was three months old, and we do not see how a parent could give a child

more consideration than was done here up until the time of the testator's death. After she was grown and was able to perform some work herself, she secured a position and was able to earn enough to purchase her own clothes, but continued to live with Mr. McBroom in the home and eat at the table kept up by Mr. McBroom as any child might do. But in this case Mr. McBroom went even further than is usually done. The young woman married, and it was undoubtedly the desire of Mr. McBroom that she and her husband and their child continue to make their home with him, her husband supporting his own family, Mrs. Blue assisting in the housework, and all living together in harmony, without any particular agreement. In addition to this, Mr. McBroom bequeathed to Mrs. Blue, as he would his own daughter, the sum of $2500. When was there a time, from the date that Mrs. Blue went into the home of Mr. McBroom until his death, that he ceased to stand in loco parentis? We are unable to discover that there was any such time, and we are of the opinion that when the legislature enacted a law pertaining to interest on a legacy, and stated that where a legacy is bequeathed to a child or "any person toward whom the testator in his lifetime stood in loco parentis", interest shall run from the date of the death of the testator, it meant to include just such a case as we have here.

We are therefore of the opinion that Anna G. Blue is entitled to receive legal interest on $2174.60 from September 14, 1934, the date of the death of James A. McBroom.

### Order

And now, December 24, 1935, this matter came on to be heard on a petition for declaratory judgment, and was before the court on briefs filed by counsel; whereupon, after due consideration, it is ordered that the petitioner, Anna G. Blue, shall receive from the executors of the estate of James A. McBroom legal interest on $2174.60

from September 14, 1934, to September 14, 1935, being $130.48, and judgment is rendered against the estate of James A. McBroom in said amount.

From W. G. Barker, Mercer.